Good morning, Your Honors. Sylvia Baez on behalf of Mr. Casillas. This is a case involving, of course, forced medication. What's the status of that? The status of it is that he's still incompetent after being forced medicated. And that's exactly what the psychiatrist that testified on Mr. Casillas' behalf said, that even if you force medicate him, he's so delusional that it's not going to affect. The medication is not going to affect him. How much more treatment is scheduled? Well, we have a status set before the district court on Monday, and they requested additional time because the judge ordered that he be transferred to Springfield where they treat you, that he be transferred there on August 4th. And so he set a status date for the next Monday. But, of course, he doesn't have jurisdiction because this case is up on appeal. But he's still incompetent. He's been incompetent for many, many years. So assuming he had jurisdiction, you've got a conference scheduled on Monday in which what would happen? Well, he would try to see whether or not he would grant an extension for them to keep forced medicating him. And I don't think that that's going to do any good at all. And I would move to dismiss the case, again, based on the fact that he will be there beyond the time that he's supposed to be there to be medicated. This case is supposedly beyond the time he's supposed to be there. Is there an end date to the order? December 14th. He's only supposed to be there 120 days unless they have a reasonable reason to ask for a further extension. And there is no reason here because he's incompetent, and that forced medication is not going to make him competent. And they have asked for an extension? They asked for an extension. The government submitted the latest letter regarding his status to the court last week. And that hearing is scheduled for Monday, so that the judge might not extend it or might. Well, I would ask that he not. But I don't think it's necessary. What will happen to your client? You know, one of the things that has happened recently is that because there's several people that are mentally ill like this and go through the system a lot, is that the Mexican government is stepping up their efforts to place them in medical institutions where they just won't be let out to the street, where there's follow-up. Because before... In Mexico. Yes. But until recently, a person could only be released and go to Mexico and go to a medical facility if the family paid for it. And, of course, a lot of people don't have money. So they would just be back in the street and they'd come back again. But that is a recent development in Mexico. That's actually the immigration service. So what are the reasonable possibilities in the hearing that's coming up? What are the options that the judge will have? He's only going to consider whether or not he should give them more time to keep forced medication. And if he says no, what happens then? No more time? Seen enough? If he says no, we still don't have jurisdiction because, of course, the court is hearing the matter now. Let's assume we remanded him. If he says no, then the charges have to be dismissed because he's incompetent to stand trial, right? Well, that's what I would hope for. I have been talking to the government a lot about trying to see about resolving this case and getting them back to Mexico, but it wasn't until recently that I learned that there's this procedure where they actually do follow up on mental health issues. But if the court has jurisdiction when you go back, what will you ask the court to do? To dismiss it. Dismiss it. Yes. And then what will happen to your client? And then he'll go into immigration custody, and at the same time that he's dismissed, I'll contact the immigration authorities. This particular program is under the auspice of the immigration officials in Mexico. And I would contact them, and I would ask them to take him into custody. And what they actually do is they actually escort them from the border so they don't go out to the street. So you have to contact immigration here first. No. Well, how do you get them to Mexico? Oh, well, I notify the Mexican immigration officials that he's in immigration custody here in the United States because they will automatically take him to, if he's released, take him to immigration service here. Here? Here. Who's they? Department of Homeland Security. Okay. So immigration will take him. Now, they can automatically take him to the border without any further proceedings? They'll do probably an expedited removal based on a prior deportation order. Well, your client seems very mentally disturbed from reading the notices. He is. I can't imagine why the Department of Homeland Security would want to keep him there. I think they wouldn't want to keep him there. I don't think they'd want to keep him there or give him another hearing and all that because that just opens a whole new can of worms. I'm not sure what the government's interest is at this point, but maybe we should – why don't you save your time? Let's hear from the government. All right. Thank you. And please support Daniel Zip on behalf of the United States. First, would we have to issue an order of remand to allow the district judge to conduct this proceeding? What proceeding is that? The one scheduled for Monday? I don't think so. I think – Why? We have jurisdiction over the case right now. We would have to do a limited remand or at least a limited remand for the purpose – because he's scheduled to hear this on December 14th. That's Monday. Right. You're here now. That means we have jurisdiction. He can't do anything. Anything he does is void. Okay. Then, yes, I suppose we would need some sort of remand if we were going to go forward with this case. All right. Well, let's assume whatever has to be done, we'll do. Then what would happen on Monday? Are you handling the hearing on Monday? I am, Your Honor. Basically, the timeframe on this case was the order was issued on August 4th. He was not moved to the Springfield facility until September 17th, and they didn't start actually medicating, it looks like, until a week or so after that. So he's been receiving medication for about a little over two months at this point. The report that I submitted to the Court shows that at this point they haven't been able to tell whether he's been restored to competency. So our position, assuming there would be a status hearing in front of Judge Benitez, would be to request an extension of another four months so that we can see if this medication can have the effect of restoring him to competency. Well, you're familiar with the cell test, right? Isn't the government's interest diminishing as they keep trying to medicate him into competency and it's not working? I mean, your stated interest is that you want him to serve 20 years for having illegally reentered. Under Hernandez-Vasquez, the starting point is his guidelines offense range. In this case, it's still 92 to 115 months. So he's been in custody for a little under 40 months. So the government still has a significant interest in this case. He's been in custody 140 and the guideline range is? He's been under 40 and his guideline range is 92 to 115. So you want to keep medicating him until you get to 92? We'd like to keep medicating him until he's restored to competency and he can stand trial. Do you know anything about this program where the Mexican government puts him in an institution? I don't know the specifics. This is the first I've heard of it this morning. I know in the past our office has sometimes reached agreements when a defendant has family that can pay for it. I'm not aware of any program that would allow him to be put to receive care in Mexico for free. Moreover, that wouldn't be an ideal situation from the government's standpoint. If he is not able to be restored to competency and we can't pursue criminal charges against him, obviously that would be, I think, in everyone's interest to have him in a medical facility in Mexico. However, once he crosses the border, we don't really have any more control over him. And his history has shown that he's repeatedly refused to take medication. So it seems unlikely that absent some sort of custodial care in Mexico that he would continue taking medication. The question is, is there custodial care in Mexico that can be arranged? And you don't know whether that can be done. It seems unlikely given the fact that the doctors that have testified in this case have said that he's not a candidate for civil confinement because he's not a danger to himself or others. So I'm speculating, but it would seem unlikely that he would be placed in an institution in Mexico. And then given his behavior over the last 15 years, it seems very likely that he would come back and we would be right back here again. So you want to go in and ask the judge for four more months, and if it doesn't – what's your position if after four more months he doesn't give us – dismissing charges and arranging for him to receive treatment in Mexico? Or even absent that, I don't think we would have much choice then besides dismissing the charges. It's our hope that he will be restored to competency. He has been restored to competency in the past. He's only been treated for a relatively short amount of time now. So we would like to see him restored and come back so that we can continue. It's actually like it's three months already, not two. Didn't he say September 17th he started treatment? September 17th is when he arrived at the facilities. I don't believe they actually began treatment until a week or so after that. Well, September 17th is three months, so that would be a week closer to three months. Is Springfield asking for an extension? They will be, yes, Your Honor. They will be? Well, I don't know how this works. You can't really go in and have this hearing while this appeal is pending on the very issue of whether the order sending him there in the first place is appropriate. Right. Well, it's our position that the judge in this case met all four of the cell factors. As far as the question of whether he should be receiving his medication, it's clear that all of the factors have been met, that there is a government interest. Under Hernandez-Vazquez, a case that dealt with an almost identical 1326, the court said this is a serious crime and the government has an interest in prosecuting it. The district court didn't clearly air in any of the other three cell factors when he found that there was a substantial probability that this defendant would be restored to competency. That was based on the testimony of a number of doctors, along with the fact that Judge Benitez put a lot of weight in, which is that this defendant has been restored to competency in the past. So it takes long enough to commit the next offense, right? Essentially. That's a wonderful system. Yeah, really. It's not a shield, but... So you're going to restore him long enough so that you can try him and then he's going to go back to whatever he is? No, you put him in jail, right? Well... You didn't give him time served? Does he get time for having been in a mental institution? He does receive credit for that, but like I said earlier, in this case his guideline range is considerably higher than what he spent. So for the last 15 years it has been going through that same process, and that's kind of why we're here at this point, to say you need to restore him to competency so he can face the guideline range that he's now facing. We don't have much choice. With respect to the... There's not much dispute over the third cell factor, that there's no less intrusive alternative means. And then the district court, again, did not clearly err on the question of whether this is medically appropriate. Is he eligible for a prison exchange treaty between the United States and Mexico? I don't know. I haven't explored that. So with that, we would ask that you affirm the district court's order that allowed him to be restored. Thank you. I guess one of the first things I'd like to invite is his criminal history. The government's argument that it's a 92 to 115 is purely speculative because there's never been a pre-sentence report that's done or submitted to the court. It's based on their assumption that everything in the rap sheet that they pulled is right. It's not. It hasn't been tested with a pre-sentence report and allowed us to... They didn't raise that point on appeal to us. Yeah, I didn't. I did raise it to the judge, too, and he just... But you didn't raise it to us. Oh, I didn't raise it to you regarding the sentencing. Right. Whether 92 is the proper... I don't think I was very clear. You're right. I was not clear about that. So why don't you ask for a pre-plea probation report on Monday if you get there? I will. Then you can really know what... Right. But I think that the court did not meet all the self-factors because the court didn't even in its decision, either in the written order or in its decision, saying that it was going to re-enter the order to medicate him again, never even weighed the testimony of our expert about how he was not going to become competent. Well, he accepted the government's expert, and he just made the determination that the government's expert was more persuasive. He believed the government expert, which may not have been right or may have been, but I don't think that's the kind of finding we can reverse. Well, I don't think he even... Well, I mean, he didn't say anything about it. He didn't say anything about the opinion testimony. He kind of just went along with the government's expert. But, you know, as time goes by, Mr. Casillas has already been in custody 40 months. It's going to be 40 months this year. He was initially offered a 48-month deal by the government. And the problem is that he's not competent. I don't believe he's going to be competent. When the judge ordered that he be medicated on August 4th, the statute says you have 120 days, and then you have to provide a reason why you're going to keep the person any longer. They waited six weeks before they took him out to Springfield again. And, you know, I don't think it's his fault that he had to wait another six weeks before the government... Well, that's an argument to make to the district court. Well, yeah, I will make that argument. Are you telling us, as an officer of the court, that he does not have a carjacking offense? I don't think he does. Have you seen the documents? I've looked through the documents, and there's a piece of the superior court file missing, and I need to fill in that gap. But I don't think it's his. It's not in his name, for one thing. So I need to probably get the booking information to see whether or not the fingerprints are... Ask the judge for a preplay, and maybe you'll be able to get a preplay probation report. Nail that. Maybe you'll be able to get an agreement. We will nail that down. I'll do that. I certainly will do that. Is he eligible for a prison or transfer treaty? Well, you know, I haven't looked into that issue in a long time, but prior to when I did do that kind of work, immigration violations were excluded from the treaty transfer. It was only, like, drug cases that you could really get that on. All right. Well, we may get back to some of this later, but the first step, I think, will be to see what the district court does, because that could vote the case. Thank you, Holmes. Thank you for your time. Thank you. The case just argued will be submitted. The final case for the morning is Raul v. Hutter.
judges: Reinhardt, Trott, Wardlaw